STROUD, Judge.
 

 *812
 
 Respondent-mother appeals order staying proceedings and purporting to transfer jurisdiction of this child custody proceeding under Chapter 7B to Tennessee. We affirm.
 

 I. Background
 

 On 27 July 2009, DSS filed a petition alleging Jane
 
 [1]
 
 was a neglected juvenile, and on 18 September 2009 the trial court adjudicated her as neglected. In a review hearing order, on 17 December 2009, the trial court noted Jane was "in the care of a maternal great aunt [, Ms. Brickel,] the placement has gone well[,]" and Mother was now residing in Virginia. Jane continued to do well with her aunt, as noted in the 22 April 2010 permanency planning order. On 8 July 2010, the trial court entered another permanency planning order which found Mother was not present at the hearing and it was not known where she was "residing."
 

 About six months later, on 19 January 2011, the trial court found that Jane had been residing with the Brickels since September of 2009, placement had "gone well and the BRICKELS have expressed a willingness and desire to continue to provide care and placement for the child." Mother had not been in contact with DSS, and DSS was relieved of reunification efforts. The permanent plan for Jane was "custody and guardianship with a relative[.]" The trial court ordered the Brickels receive "legal and physical care, custody, and control of" Jane, appointed the Brickels as joint guardians of Jane, "released and discharged" Mother's attorney, and waived future review hearings. On 6 August 2014, Mother and the Brickels entered into a consent order agreeing Jane would remain in the custody of the Brickels, and Mother would have visitation. The consent order noted that in late 2013 or early 2014, the Brickels had moved to Tennessee.
 

 A few years later, in November of 2017, the Brickels filed a motion in Tennessee to register the North Carolina custody order and modify custody; Mother then filed a motion in Tennessee to dismiss the Brickels' motion. Mother also filed three
 
 pro se
 
 motions in North Carolina between December of 2017 and January of 2018: (1) a motion for review requesting an "emergency" revocation of the Brickels as guardians and that she be appointed as Jane's guardian; (2) a motion and order to show cause claiming the Brickels had violated the custody agreement; and (3) a motion requesting North Carolina to invoke jurisdiction as it was the "more appropriate forum[.]" (Original in all caps.) Meanwhile, before any of Mother's motions in North Carolina were heard, by January of 2018, Tennessee had entered orders assuming jurisdiction of custody and modifying Mother's visitation. Mother was present and testified at the hearing in Tennessee regarding its jurisdiction, and the Tennessee court found that none of the parties nor Jane had lived in North Carolina since 2014. The Brickels then filed a motion in North Carolina to "stay" Mother's pending motions or to transfer jurisdiction to Tennessee because North Carolina was an "inconvenient forum[,]" and on 18 June 2018, the North Carolina trial court allowed the Brickels' motion to "stay" and "transfer" jurisdiction based on North Carolina being an inconvenient forum. Mother appeals.
 

 II. Interlocutory Appeal
 

 Mother argues that we have jurisdiction to consider this appeal under North Carolina General Statutes § 7B-1001(a)(2), which allows appeal of "[a]ny order, including the involuntary dismissal of a petition, which in effect determines the action and prevents a judgment from which appeal might be taken," N.C. Gen. Stat. § 7B-1001(a)(2) (2017),
 
 [2]
 
 and because it is a final order. As far as North Carolina is concerned, the order on appeal is final, since it does not leave the case open "for further action by the trial court in order to settle and determine the entire controversy[,]"
 
 Veazey v. City of Durham
 
 ,
 
 231 N.C. 357
 
 , 362,
 
 57 S.E.2d 377
 
 , 381 (1950), but rather "transfers" the matter to
 
 *813
 
 Tennessee. We therefore have jurisdiction to consider Mother's appeal.
 

 There is another unusual procedural twist to this case. We note that while this case was initiated by DSS because of an investigation of neglect, DSS is not a party to this appeal nor did a guardian
 
 ad litem
 
 participate on behalf of Jane. The only parties appearing or participating before the trial court and this Court are Mother and the Brickels. But this case was never transferred as a Chapter 50 private matter; it has remained under Chapter 7B since its inception and continues as a juvenile matter in Tennessee.
 

 III. Findings of Fact
 

 Mother does not challenge any specific finding of fact, but generally argues that the trial court erred by making findings of fact at all when no competent evidence was presented before the trial court because the motions and documents filed by the parties, including Mother, were unverified or uncertified and no sworn testimony was presented at the hearing. Mother also contends that she did not have an opportunity to present evidence before the trial court.
 

 When the trial court
 

 sits without a jury, 'the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable de novo.'
 

 In addition, findings of fact to which error is not assigned are binding on this Court.
 

 Citifinancial Mtge. Co. v. Gray
 
 ,
 
 187 N.C. App. 82
 
 , 88,
 
 652 S.E.2d 321
 
 , 324 (2007) (citations, quotation marks, and ellipses omitted).
 

 First, from our review of the transcript of the hearing, Mother had the opportunity to present evidence; she made arguments to the trial court but did not ask to be sworn in or to make any formal offer of evidence, and thus the trial court did not prevent her from testifying or offering other evidence. The trial court's order notes it had reviewed the court file, spoken with the trial judge in Tennessee, and it took judicial notice of the orders entered in Tennessee. Almost all of the trial court's findings, and all of the relevant findings for this appeal, are based upon the prior orders entered in North Carolina and Tennessee. The prior orders and Tennessee order support the trial court's findings regarding the procedural history of the case, as summarized above, the residences of the parties, and that Jane and the Brickels had been residing in Tennessee for "approximately four(4) to five(5) years[.]" Any findings regarding the analysis of whether North Carolina is an inconvenient forum were unnecessary, since the trial court should not conduct such an inquiry unless it has jurisdiction.
 
 See
 
 N.C. Gen. Stat. § 50A-207(a) (2017) (noting the inconvenient forum analysis when "[a] court of this State ... has jurisdiction").
 

 IV. Jurisdiction
 

 Before the trial court, the main issue was North Carolina's jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), as both Mother's and Brickels's motions addressed the court's subject matter jurisdiction. Mother challenges the trial court's conclusions of law, and in particular, its conclusion that Tennessee should exercise subject matter jurisdiction under the UCCJEA. "Whether the trial court has jurisdiction under the UCCJEA is a question of law subject to
 
 de novo
 
 review."
 
 In re J.H.
 
 ,
 
 244 N.C. App. 255
 
 , 260,
 
 780 S.E.2d 228
 
 , 233 (2015).
 

 A. Tennessee's Exclusive Jurisdiction
 

 The trial court's order concluded that it "has subject matter jurisdiction over this action" and that "Tennessee also has appropriate subject matter jurisdiction over this action." This conclusion is in error because North Carolina no longer had subject matter jurisdiction. Mother contends that "North Carolina had not released its jurisdiction[,]" and thus North Carolina and Tennessee have concurrent jurisdiction, but the Tennessee order in our record includes findings of fact in accordance with Uniform Child Custody Act for exclusive jurisdiction as it found no
 
 *814
 
 parties nor the child had resided in North Carolina for many years.
 
 See generally
 
 N.C. Gen. Stat. § 50A-202(a)(2) (2017). North Carolina did not need to "release" its jurisdiction under these facts as Tennessee properly exercised its jurisdiction to modify visitation under
 
 Tenn. Code Ann. § 36-6-218
 
 (2017), which is the same as North Carolina General Statute § 50A-203.
 
 [3]
 

 See generally
 
 N.C. Gen. Stat. § 50A-203 (2017) ;
 
 Tenn. Code Ann. § 36-6-218
 
 (2017). Tennessee had authority to make this determination because none of the parties reside in North Carolina.
 
 See
 
 N.C. Gen. Stat. § 50A-203 Uniform Law Comment ("The modification State is not authorized to determine that the original decree State has lost its jurisdiction.
 
 The only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the other State. In other words, a court of the modification State can determine that all parties have moved away from the original State
 
 ." (emphasis added)).
 

 Mother participated in the hearing in Tennessee and does not dispute that she lives in Virginia and that none of the parties remain in North Carolina. Based on our record, it appears that Tennessee exercised jurisdiction in accord with the UCCJEA. If Mother believes Tennessee failed to comply with proper procedures under the UCCJEA, that would need to be addressed in Tennessee by a review of the Tennessee order which took exclusive jurisdiction.
 

 B. Emergency Revocation
 

 While the trial court order rules upon the Brickels' motion to stay based upon "inconvenient forum[,]" their motion to stay was in response to Mother's motions. The Brickels requested a stay of Mother's motions or transfer of the motions to Tennessee. To address the Brickels' motion, the trial court necessarily had to consider Mother's motions, and the trial court notes this in its first finding of fact: "The issues before the Court are ... [Mother's] motions for a review, removal of guardian, and emergency revocation." Mother's first motion was to modify custody based on "[e]mergency" circumstances; Mother's second motion depended on the first as it claimed the custody agreement had been violated; and Mother's third motion was regarding jurisdiction which also had to be addressed since Mother's first two motions could be considered only if the trial court had jurisdiction and the Brickels's motion itself raised the issue of jurisdiction.
 

 Even if a state would not otherwise have jurisdiction to make a child custody determination, it may have "temporary emergency jurisdiction" to make a determination:
 

 (a) A court of this State has temporary emergency jurisdiction
 
 if the child is present in this State
 
 and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
 

 N.C. Gen. Stat. § 50A-204(a) (2017) (emphasis added).
 

 Mother alleged the need for an emergency order based upon allegations that Jane had been cutting herself; that the Brickels allowed Jane "to go where aggressiveness is shown to both Brickels['] and Mother; that Jane was "severely depressed" and anxious, but her motions also alleged that Jane was residing in Tennessee. There was no indication that Jane was "present in this State" at any relevant time for the trial court to exercise temporary emergency jurisdiction under the UCCJEA.
 

 Id.
 

 Although it may not have been necessary, since Jane was not "present in this state[,]" the trial court followed the procedures set out by the UCCJEA in communicating with the court in Tennessee based upon the allegations of potential harm to Jane:
 

 [a] court of this State which has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination
 
 *815
 
 has been made by, a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203 shall immediately communicate with the other court. A court of this State which is exercising jurisdiction pursuant to G.S. 50A-201 through G.S. 50A-203, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.
 

 N.C. Gen. Stat. § 50A-204(d) (2017). Finding of fact 10 notes that the trial court contacted the court in Tennessee, and both judges agreed the case should proceed in Tennessee.
 
 [4]
 
 Therefore, the trial court "stayed" Mother's motions and purported to "transfer" the case to Tennessee, although actually there was no need to "stay" any proceedings in North Carolina, since North Carolina has no jurisdiction to rule upon any pending motions, and Tennessee had already assumed jurisdiction under the UCCJEA. Although the trial court's order is based upon the wrong rationale, the result is correct.
 
 See generally
 

 Hughey v. Cloninger
 
 ,
 
 297 N.C. 86
 
 , 95-96,
 
 253 S.E.2d 898
 
 , 903-04 (1979) (affirming where a lower court, this Court, "reached the right result but for the wrong reason").
 

 V. Conclusion
 

 For the foregoing reasons, we affirm.
 

 AFFIRMED.
 

 Judges INMAN and ZACHARY concur.
 

 [1]
 

 A pseudonym is used to protect the identity of the minor involved.
 

 [2]
 

 Amended effective 1 January 2019.
 
 See
 
 N.C. Gen. Stat. § 7B-1001.
 

 [3]
 

 In Tennessee, the case remains a juvenile matter, not a private custody case. The Tennessee court appointed a guardian
 
 ad litem
 
 for Jane, "Court Appointed Special Advocates" ("CASA") was appointed for the Brickels, and CASA of Virginia or the like was appointed to work with Mother.
 

 [4]
 

 Mother also contends that the trial court did not conduct or document its communication with the Tennessee court correctly, but since North Carolina had no jurisdiction and Jane was not present in North Carolina, we need not address this argument.