INMAN, Judge.
*69 Mother appeals from an order of the trial court which, inter alia , appointed her sister ("Aunt") as custodian of her minor child, Thomas,[1] born in February 2009. We affirm the order in part, vacate in part, and remand for further proceedings.
On 23 November 2014, Mecklenburg County Youth and Family Services ("YFS") received a report that Mother had exposed Thomas to inappropriate sexual activity and had licked his penis. A social worker interviewed Thomas, who confirmed that Mother licked his penis "on one occasion." Mother denied touching her son inappropriately but signed a safety assessment agreeing to have no contact with Thomas and allowing him to reside with his maternal great-grandmother ("Great-Grandmother"). Great-Grandmother later contacted YFS to report that Mother had come to her residence and taken Thomas. YFS returned to Mother's home and found the child. The police were called after Mother refused to allow YFS into her home. YFS took Thomas into nonsecure custody and filed a juvenile petition alleging neglect and dependency on 24 November 2014.[2]
Mother was criminally charged with taking indecent liberties with a minor and sexual offense in a parental role on 3 January 2015. YFS transferred Thomas from foster care into the home of his maternal aunt ("Aunt") on the weekend of 31 January 2015.
At a hearing on 31 March 2015, Mother stipulated to the allegations in the petition filed by YFS. The trial court adjudicated Thomas a neglected and dependent juvenile by order entered 13 May 2015. At disposition, the court found that the barriers to reunification "include but are not necessarily limited to the inappropriate sexual contact of the juvenile by the mother, and exposure of the juvenile to inappropriate *70 sexual matters by the mother." The court denied Mother visitation and delayed requiring her to obtain a parenting capacity evaluation, because she was prohibited from having any contact with Thomas as a condition of pretrial release in her criminal case. The court ordered Mother to comply with all conditions of her family services agreement "that do not conflict with the criminal matter." It established a plan of care of reunification with a concurrent plan of guardianship or adoption.
In a review order entered 19 October 2015, the trial court found that Mother had obtained housing and employment "but is not complying with any treatment recommendations currently." Mother refused to participate in recommended substance abuse treatment. She participated only intermittently in mental health treatment and had rejected a recommended medication evaluation, "stating [that] it is not needed." The court noted that Mother's "therapist believes the mother has psychosis that requires further evaluation." As her criminal charges remained pending, Mother was allowed no visitation with Thomas.
The trial court held a permanency planning hearing on 2 December 2015. By order entered 11 January 2016, it changed Thomas' permanent plan to custody with a relative or *794 other suitable person and transferred legal custody of the child from YFS to Aunt.[3] The court suspended further reunification efforts and released Thomas' guardian ad litem ("GAL") and the parents' attorneys. Mother filed timely notice of appeal from the permanency planning order.
I. Ceasing Reunification Efforts
Mother first claims the trial court erred in ceasing reunification efforts based on its finding, "[p]ursuant to" N.C. Gen. Stat. § 7B-901(c)(1) (2015), that
[a] court of competent jurisdiction has determined that aggravated circumstances exist because the parent has committed ... any of the following upon the juvenile: [s]exual abuse[; c]hronic physical or emotional abuse[;] ... [or a]ny other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect.
*71 She further contends that the court failed to make the finding required to cease reunification efforts under N.C. Gen. Stat. § 7B-906.1(d)(3) (2015) and that such efforts "clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time." Id.
YFS concedes the trial court was not authorized to cease reunification efforts under N.C. Gen. Stat. § 7B-901(c) at a permanency planning hearing subsequent to the initial dispositional hearing. See N.C. Gen. Stat. § 7B-901 (2015) ("Initial dispositional hearing"). It argues that the court's erroneous finding under subsection 7B-901(c) is harmless, however, because its other uncontested findings support its decision to cease reunification efforts pursuant to N.C. Gen. Stat. § 7B-906.2 (2015). We will address each of the parties' arguments in turn.
"It is clear from the statutory framework of the Juvenile Code that one of the essential aims, if not the essential aim, of the dispositional hearing and the review hearing is to reunite the parent(s) and the child, after the child has been taken from the custody of the parent(s)." In re Shue , 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984) (interpreting prior Juvenile Code); see also N.C. Gen. Stat. § 7B-100(4) (2015) (announcing general policy in favor of "the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents"). To that end, N.C. Gen. Stat. § 7B-901(c) prescribes a narrow set of circumstances in which the trial court "shall direct that reasonable efforts for reunification ... shall not be required" as part of its initial disposition order. Id. We agree with the parties that, by its placement in N.C. Gen. Stat. § 7B-901, subsection (c) has no application beyond the "[i]nitial dispositional hearing." N.C. Gen. Stat. § 7B-901.
The trial court erred by purporting to cease reunification efforts by making a finding under N.C. Gen. Stat. § 7B-901(c) at the permanency planning hearing. We note the court utilized a pre-printed form order and simply marked the boxes beside the form's language referencing N.C. Gen. Stat. § 7B-901(c). The court entered no evidentiary findings that reveal the basis for its determination. YFS adduced no evidence at the hearing that a court of competent jurisdiction had previously determined that Mother committed the acts specified in N.C. Gen. Stat. § 7B-901(c). The parties advised the court that Mother's criminal trial had not yet occurred.
*72 Mother suggests the trial court may not cease reunification efforts without making a finding under N.C. Gen. Stat. § 7B-906.1(d)(3). Subsection 7B-906.1(d) requires the trial court to "consider" certain factors at each review hearing and permanency planning hearing after the initial disposition and to "make written findings regarding those that are relevant[.]" N.C. Gen. Stat. § 7B-906.1(d). Among these statutory factors is "[w]hether efforts to reunite the juvenile with either parent clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time."
*795 N.C. Gen. Stat. § 7B-906.1(d)(3).[4] Subdivision (d)(3) further provides that "[i]f the court determines efforts would be futile or inconsistent, the court shall consider a permanent plan of care for the juvenile." Id.
As YFS observes, N.C. Gen. Stat. § 7B-906.1(d)(3) does not expressly authorize the ceasing of reunification efforts. Rather, upon making a finding of futility or inconsistency under the subdivision, the trial court is instructed to "consider a permanent plan of care for the juvenile." Id. Obviously, a court presiding at a permanency planning hearing will always consider a permanent plan of care for the juvenile and, indeed, must "adopt concurrent permanent plans and ... identify the primary plan and secondary plan." N.C. Gen. Stat. § 7B-906.2(b) (2015) ; see also N.C. Gen. Stat. § 7B-906.1(a), (g) (2015). We interpret N.C. Gen. Stat. § 7B-906.1(d)(3) as triggering the court's duty to commence the permanent planning process as early as the initial 90-day review hearing, see N.C. Gen. Stat. § 7B-906.1(a) (2015), if the court is able to determine that reunification efforts "clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(d)(3). Absent this provision, permanency planning might be needlessly delayed to the detriment of the juvenile.[5]
*73 See generally N.C. Gen. Stat. § 7B-906.1(a) (requiring first permanency planning hearing to be held "[w]ithin 12 months of the date of the initial order removing custody").
Where reunification efforts are not preempted as part of the initial disposition pursuant to N.C. Gen. Stat. § 7B-901(c), the trial court may cease reunification efforts at the permanency planning stage pursuant to N.C. Gen. Stat. § 7B-906.2(b), which provides as follows:
At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety . The court shall order the county department of social services to make efforts toward finalizing the primary and secondary permanent plans and may specify efforts that are reasonable to timely achieve permanence for the juvenile.
Id. (emphasis added); see also N.C. Gen. Stat. § 7B-906.2(c) (2015) ("At the first permanency planning hearing held pursuant to G.S. 7B-906.1, the court shall make a finding about whether the efforts of the county department of social services toward reunification were reasonable, unless reunification efforts were ceased in accordance with G.S. 7B-901(c) or this section."). Thus, if reunification efforts are not foreclosed as part of the initial disposition pursuant to N.C. Gen. Stat. § 7B-901(c), the court may eliminate reunification as a goal of the permanent plan only upon a finding made under N.C. Gen. Stat. § 7B-906.2(b). Cf. N.C. Gen. Stat. § 7B-1001(a)(5) (2015) (providing a right of appeal from an order "eliminating reunification as a permanent plan" pursuant to " G.S. 7B-906.2(b)"). Only when reunification is eliminated from the permanent plan is the department of social services relieved from undertaking reasonable efforts to reunify the *796 parent and child. See N.C. Gen. Stat. § 7B-906.2(c).
In the case sub judice , the trial court marked two boxes on the order form indicating its ceasing of reunification efforts pursuant to N.C. Gen. Stat. § 7B-901(c). Conspicuously left blank is the following pre-printed provision: "16. Pursuant to NCGS § 7B-906.2(b), reunification efforts with __________ clearly would be unsuccessful or would be inconsistent *74 with the juvenile's health and safety."[6] As discussed above, the court had no authority to cease reunification efforts by making a finding under N.C. Gen. Stat. § 7B-901(c) at the permanency planning hearing.
We are not persuaded by YFS's suggestion that the trial court's additional findings support a ceasing of reunification efforts pursuant to N.C. Gen. Stat. § 7B-906.2(b). It is true that the order includes findings about the four factors set forth in N.C. Gen. Stat. § 7B-906.2(d) (2015), to wit:
(d) At any permanency planning hearing under subsections (b) and (c) of this section, the court shall make written findings as to each of the following, which shall demonstrate lack of success:
(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
Id . Specifically, the court noted (1) Mother's refusal to engage in substance abuse or mental health treatment, as well as the ongoing pendency of her criminal charges, more than one year after Thomas' removal from her home; (2) her failure to attend the permanency planning hearing because she "overslept[;]" (3) her attempt to "attack" Aunt and Thomas' maternal grandmother ("Grandmother") after a Child and Family Team ("CFT") meeting on 16 November 2015; and (4) the court's belief that both "parents are acting in a manner inconsistent with the health or safety of the juvenile." "None of these findings address the ultimate finding of fact required of the trial court," under N.C. Gen. Stat. § 7B-906.2(b), i.e. , whether further efforts to reunify Thomas with his mother clearly would be unsuccessful or would be inconsistent with his health or safety.
*75 In re A.E.C. , 239 N.C.App. 36, 43, 768 S.E.2d 166, 171 (2015) (construing former N.C. Gen. Stat. § 7B-507(b)(1)[7] ), disc. review denied , 368 N.C. 264, 772 S.E.2d 711 (2015). " 'This Court cannot simply infer from the findings that reunification efforts would be futile or inconsistent with the juvenile's health[ or] safety ... where the trial court was required to make ultimate findings specially based on a process[ ] of logical reasoning.' " Id. (second alteration in original) (emphasis in original) (quoting In re I.R.C. , 214 N.C.App. 358, 363-64, 714 S.E.2d 495, 499 (2011) ).
In In re L.M.T. , 367 N.C. 165, 752 S.E.2d 453 (2013), our Supreme Court addressed the fact-finding requirement of former N.C. Gen. Stat. § 7B-507(b)(1), which allowed the trial court to cease reunification efforts if it made "written findings of fact that ... [s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" Id. at 167, 752 S.E.2d at 455. While noting that "[s]trict adherence" to the statutory standard furthered "the Juvenile Code's dual purpose of protecting parental rights and promoting the best interests of the child," the Court held that such adherence did not require the trial court to quote the statute directly:
*797 While trial courts are advised that use of the actual statutory language would be the best practice, the statute does not demand a verbatim recitation of its language.... Put differently, the order must make clear that the trial court considered the evidence in light of whether reunification "would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." The trial court's written findings must address the statute's concerns, but need not quote its exact language.
Id. at 167-68, 752 S.E.2d at 455 (emphasis added).
We cannot determine that the trial court in fact "considered the evidence in light of" the appropriate statutory standard, given (1) its erroneous finding under N.C. Gen. Stat. 7B-901(c) that reunification efforts were not required and (2) its failure to mark the requisite finding on the pre-printed order form that, "[p]ursuant to NCGS § 7B-906.2(b), *76 reunification efforts with [Mother] clearly would be unsuccessful or would be inconsistent with [Thomas'] health and safety." Id. While the court's evidentiary findings may support an ultimate finding under N.C. Gen. Stat. § 7B-906.2(b), it is not the role of the reviewing court to draw inferences or make ultimate findings on the trial court's behalf. See, e.g. , Quick v. Quick , 305 N.C. 446, 451-52, 290 S.E.2d 653, 657-58 (1982). Therefore, we vacate the permanency planning order insofar as it provides that reunification efforts are not required and remand for further proceedings. In re A.E.C. , 239 N.C.App. at 44-45, 768 S.E.2d at 172.
II. Verification of Custodian
Mother next contends the trial court violated N.C. Gen. Stat. § 7B-906.1(j) (2015) by placing Thomas in the legal custody of Aunt without verifying that she "understands the legal significance of the placement ... and will have adequate resources to care appropriately for the juvenile." Id . "We have held that the trial court need not 'make any specific findings in order to make the verification' under" subsection (j). In re J.H. , --- N.C.App. ----, ----, 780 S.E.2d 228, 240 (2015) (quoting In re J.E., B.E. , 182 N.C.App. 612, 616-17, 643 S.E.2d 70, 73 (2007) ). "But the record must contain competent evidence of the [custo]dians' financial resources and their awareness of their legal obligations." Id.
The trial court received competent evidence that Aunt understood the legal significance of Thomas' placement in her custody. YFS submitted a written report conveying Aunt's "desire to provide permanence for her nephew until he [is] able to be reunited with his mother" and recommending that Aunt be granted custody of Thomas. The GAL recommended awarding guardianship to Aunt and reported that "Aunt expressed interest in permanent guardianship." The court confirmed that the YFS social worker had "talked with [Aunt] in detail about" the alternative recommendations of custody and guardianship. The social worker explained YFS's rationale for recommending an award of custody to Aunt rather than guardianship, in that "when [Mother's] criminal matter is resolved ..., if she done everything that she needs to do, it's possible that she can maintain custody of [Thomas]. And her family was in agreement if she was at a place where she could get custody back of her son, when the criminal matter is taken care of." Aunt affirmed to the court that she understood Mother might be able to regain custody of Thomas if warranted by future circumstances. The court entered findings consistent with this evidence. While it did not expressly find that Aunt "understands the legal significance" of having legal custody of Thomas, we hold the court properly verified her understanding for purposes of N.C. Gen. Stat. § 7B-906.1(j). See *77 In re J.E., B.E. , 182 N.C.App. at 617, 643 S.E.2d at 73 ; see also In re L.M. , 238 N.C.App. 345, 347, 767 S.E.2d 430, 432 (2014) ("It is sufficient that the court receives and considers evidence that the guardians understand the legal significance of the guardianship.").
We agree with Mother that the court did not receive sufficient evidence to verify the adequacy of Aunt's resources under N.C. Gen. Stat. § 7B-906.1(j). YFS reported that Thomas had "been successfully maintained in the home of [Aunt] for the past ten months." However, this fact alone is insufficient to *798 support a verification under subsection (j). See In re J.H. , --- N.C.App. at ----, 780 S.E.2d at 240 (deeming ten-month "successful kinship placement" with grandparents insufficient to demonstrate adequacy of grandparents' resources). The GAL described Aunt's home as "very clean" and reported that Thomas "has his own room" but further reported that Aunt was unemployed and "stated that she needs more financial support for [Thomas]." Although Aunt had been awarded unemployment compensation benefits at the time of the hearing, she told the court that she had yet to find employment and was "just continuously looking for jobs." She credited Grandmother and Great-Grandmother for providing "additional support" and "assistance" in caring for Thomas. Such vague assurances do not suffice to allow an "independent determination" by the court, "based upon the facts in the particular case, that the resources available to the potential [custodian] are in fact 'adequate' " for purposes of N.C. Gen. Stat. § 7B-906.1(j). See In re P.A. , 241 N.C.App. 53, 65 772 S.E.2d 240, 248 (2015). Accordingly, we vacate the award of legal custody to Aunt and remand for further proceedings. Id.
III. Visitation
Mother also challenges the trial court's order that she have no contact with Thomas. She contends the court failed to make the necessary findings of fact required to deprive a parent of her right to visitation under N.C. Gen. Stat. § 7B-905.1(c) (2015). We find no merit to this claim.
"An order that ... continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2015). The order must establish an adequate visitation plan for the parent " '[i]n the absence of findings that the parent has forfeited their right to visitation or that it is in the child's best interest to deny visitation [.]' " In re T.H. , 232 N.C.App. 16, 34, 753 S.E.2d 207, 219 (2014) (quoting In re E.C. , 174 N.C.App. 517, 522-23, 621 S.E.2d 647, 652 (2005) (emphasis added)). We review an order denying *78 visitation to a respondent-parent only for abuse of discretion. In re C.M. , 183 N.C.App. 207, 215, 644 S.E.2d 588, 595 (2007).
The permanency planning order includes findings of fact, made "upon clear, cogent and convincing evidence" and in light of "the best interest of the child," that both supervised and unsupervised visitation between Mother and Thomas are "not desirable." The court made additional findings that Mother was awaiting trial on criminal charges for her alleged sexual abuse of Thomas, that she was "noncompliant with mental health treatment and substance abuse treatment services," and that she was "acting in a manner inconsistent with the health and safety of the juvenile." The court received evidence that Mother remained subject to a no contact order in her criminal case and had disrupted YFS's attempt to develop a visitation plan for her, subject to the resolution of her criminal case, at the most recent CFT meeting. We hold that the court made the necessary findings to deny visitation to Mother and that it acted well within its discretion in doing so.
Mother also objects to the trial court's decree that "[a]ny future contact allowed by [Aunt] shall be therapeutically guided." Because we affirm the trial court's denial of visitation by Mother, any condition for future visitation is merely hypothetical until such time the court removes the no contact order. Therefore we find Mother's argument that the court improperly delegated its judicial function to Thomas' Aunt is moot.
IV. Waiver of Review Hearings
Finally, Mother claims the trial court erred by waiving further review hearings without making the findings of fact required by N.C. Gen. Stat. § 7B-906.1(n) (2015), to wit:
(1) The juvenile has resided in the placement for a period of at least one year.
(2) The placement is stable and continuation of the placement is in the juvenile's best interests.
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
(4) All parties are aware that the matter may be brought before the court for review *799 at any time by the filing of a motion for review or on the court's own motion. *79 (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.
Id. Absent a waiver under subsection (n), N.C. Gen. Stat. § 7B-906.1(a) requires that "subsequent permanency planning hearings shall be held at least every six months [after the initial permanency planning hearing] ... to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile."[8] Id. If the trial court waives these hearings, it "must make written findings of fact satisfying each of the enumerated criteria listed in N.C. Gen. Stat. § 7B-906.1(n), and its failure to do so constitutes reversible error." In re P.A. , 241 N.C.App. at 66, 772 S.E.2d at 249.
It is undisputed the court did not make findings under N.C. Gen. Stat. § 7B-906.1(n). If on remand the court chooses to waive subsequent permanency planning hearings, it must comply with this requirement. See In re R.A.H. , 182 N.C.App. 52, 62, 641 S.E.2d 404, 410 (2007).
V. Conclusion
We vacate the provisions of the permanency planning order ceasing reunification efforts, eliminating reunification as a permanent plan, and placing Thomas in the legal custody of Aunt. We remand for further proceedings consistent with N.C. Gen. Stat. § 7B-906.2(b) and (j). The order is affirmed insofar as it denies visitation to Mother.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
Judges CALABRIA and STROUD concur.

The parties have adopted this pseudonym to protect the juvenile's privacy.

The petition alleged that Thomas' biological father was "on house arrest in Asheville, [North Carolina,] and there was no information provided about any additional paternal relatives [who] could care for the child."

Effective 1 July 2016, N.C. Gen. Stat. § 7B-906.2 has been amended to provide that "[c]oncurrent planning shall continue until a permanent plan has been achieved." 2016 N.C. Sess. Laws 94, §§ 12C.1.(h), 39.8 (July 14, 2016) (adding new subsection (a1) to section 7B-906.2 ).

Effective 1 July 2016, N.C. Gen. Stat. § 7B-906.1(d)(3) is amended to provide as follows:
Whether efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable time.... If the court determines efforts would be unsuccessful or inconsistent, the court shall consider other permanent plans of care for the juvenile pursuant to G.S. 7B-906.2 .
2016 N.C. Sess. Laws 94, §§ 12C.1.(g1), 39.8 (July 14, 2016) (emphasis added). The amended language more consistently tracks the standard for discontinuing reunification as a permanent plan in N.C. Gen. Stat. § 7B-906.2(b).

Similarly, where the court makes a finding under N.C. Gen. Stat. § 7B-901(c) at the initial dispositional hearing that reunification efforts are not required, the court must "order a permanent plan as soon as possible, after providing each party with a reasonable opportunity to prepare and present evidence." N.C. Gen. Stat. § 7B-901(d).

It appears the blank space on the order form allows the court to specify the parent or parents for whom reunification efforts are ceased.

Effective 1 October 2015, N.C. Gen. Stat. § 7B-507 was amended to apply only to nonsecure custody orders entered prior to an adjudication of abuse, neglect, or dependency. 2015 N.C. Sess. Laws 136, §§ 7, 18 (July 2, 2015). Among other changes, 2015 N.C. Sess. Laws 136 deleted subsections (b)-(d) from the statute. Id. § 7.

"Review hearings after the initial permanency planning hearing [are] designated as subsequent permanency planning hearings." N.C. Gen. Stat. § 7B-906.1(a).