IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-171

 Filed: 19 September 2017

Buncombe County, No. 16 JA 94

IN THE MATTER OF: N.H.

 Appeal by respondent-mother from order entered 21 November 2016 by Judge

Susan M. Dotson-Smith in Buncombe County District Court. Heard in the Court of

Appeals 24 August 2017.

 No brief filed for petitioner-appellee Buncombe County Department of Social
 Services.

 David A. Perez, for respondent-appellant mother.

 Amanda Armstrong, for guardian ad litem.

 CALABRIA, Judge.

 Respondent appeals from an order granting guardianship of her minor child,

N.H. (“Nancy”), to her sister, K.P. (“Ms. Parker”).1 We hold that there was evidence

before the trial court that Ms. Parker has adequate resources to care appropriately

for Nancy, and therefore that the trial court did not err in awarding guardianship of

Nancy to Ms. Parker.

 I. Factual and Procedural Background

 1 Pseudonyms are used throughout to protect the juvenile’s privacy and for ease of reading.
 IN RE: N.H.

 Opinion of the Court

 The Buncombe County Department of Social Services (“DSS”) initiated the

underlying juvenile case on 23 March 2016, when it filed a juvenile petition alleging

Nancy was an abused and neglected juvenile based on allegations that she had been

sexually abused by respondent’s former roommates, concerns of possible drug use by

respondent, and concerns of domestic violence in the home. DSS did not seek non-

secure custody of Nancy, because she was in a safety resource placement. On 15 April

2016, Nancy was transferred to the care of Ms. Parker, and she has remained in Ms.

Parker’s care throughout the case.

 After a hearing on 6 July 2016, the trial court entered an order on 22 July 2016,

adjudicating Nancy to be an abused and neglected juvenile. According to the order,

Nancy remained in the legal custody of respondent and Nancy’s father, but Nancy’s

safety resource placement continued with Ms. Parker. The court granted respondent

weekly supervised visitation with Nancy and ordered that Nancy continue to be

involved with outpatient mental health therapy. Additionally, the court ordered

respondent to: (1) be involved in mental health treatment; (2) follow the therapist’s

recommendations; (3) follow up with the recommendations of her comprehensive

clinical assessment; (4) participate in Nancy’s therapy; (5) submit to random drug

testing; and (6) complete a medication evaluation and follow all recommendations.

 On 6 September 2016, the trial court conducted the initial permanency

planning and review hearing in this case. In its order from the hearing, entered 21

 -2-
 IN RE: N.H.

 Opinion of the Court

November 2016, the court set the primary permanent plan for Nancy as guardianship

and set the secondary plan as reunification with her parents. The court awarded

guardianship of Nancy to Ms. Parker, granted respondent weekly supervised

visitation with Nancy, and directed DSS to continue to work toward Nancy’s

reunification with her parents. Respondent filed timely notice of appeal from the

trial court’s order awarding guardianship of Nancy to Ms. Parker.

 II. Verification of Guardian’s Resources

 Respondent’s sole argument on appeal is that the trial court erred in failing to

properly verify that Ms. Parker’s resources were adequate to provide Nancy

appropriate care as her guardian. We disagree.

 A. Standard of Review

 “Appellate review of a permanency planning order is limited to whether there

is competent evidence in the record to support the findings and [whether] the findings

support the conclusions of law.” In re R.A.H., 182 N.C. App. 52, 57-58, 641 S.E.2d

404, 408 (2007) (citation and quotation marks omitted). Before a trial court may

appoint a guardian of the person for a juvenile in a Chapter 7B case, the court must

“verify that the person being appointed as guardian of the juvenile understands the

legal significance of the appointment and will have adequate resources to care

appropriately for the juvenile.” N.C. Gen. Stat. § 7B-600(c) (2015), see also N.C. Gen.

Stat. § 7B-906.1(j) (2015) (requiring an identical verification when appointing a

 -3-
 IN RE: N.H.

 Opinion of the Court

guardian of a person for a juvenile as part of the juvenile’s permanent plan). “[T]he

trial court need not make detailed findings of evidentiary facts or extensive findings

regarding the guardian’s situation and resources, . . . [but] some evidence of the

guardian’s ‘resources’ is necessary as a practical matter, since the trial court cannot

make any determination of adequacy without evidence.” In re P.A., 241 N.C. App. 53,

61-62, 772 S.E.2d 240, 246 (2015). “The court may consider any evidence, including

hearsay evidence . . . that the court finds to be relevant, reliable, and necessary to

determine the needs of the juvenile and the most appropriate disposition.” N.C. Gen.

Stat. § 7B-906.1(c).

 B. Analysis

 With regard to the adequacy of Ms. Parker’s resources to care for Nancy as her

guardian, the trial court found:

 28. [Ms. Parker was] present at this hearing. Pursuant to
 N.C.G.S. § 7B-600(b), the Court questioned [Ms. Parker]
 and she understand[s] the legal significance of being
 appointed the minor child’s guardian, and she has
 adequate resources to care appropriately for the minor
 child, and [is] able to provide proper care and supervision
 of the minor child in a safe home.

However, on appeal, respondent contends that there was no evidence presented to

the trial court to support such a finding. For example, respondent notes that Ms.

Parker “testified as to her employment with Buncombe County Schools

Transportation, but she did not testify as to her actual income, whether she was paid

 -4-
 IN RE: N.H.

 Opinion of the Court

a salary or worked by the hour, whether she received any job benefits, nor any other

specifics regarding her employment other than she had no other source of income.”

Respondent notes various financial assets which Ms. Parker may or may not have

had, and the fact that no testimony was elicited with respect to such hypothetical

resources.

 We acknowledge that our case law addresses this situation from numerous

angles, none of them precisely on point. For example, in In re N.B., guardians

testified about their willingness to take responsibility, there was a report stating the

guardians were willing and able to provide care, and the social worker spoke “in

depth” with the guardians about the requirements and responsibilities of being

guardians. We held that this was adequate evidence pursuant to N.C. Gen. Stat. §

7B-906.1. In re N.B., 240 N.C. App. 353, 361-62, 771 S.E.2d 562, 568 (2015). By

contrast, in In re P.A., where the only evidence was an unsworn statement by the

guardian that the guardian had the ability to support the juvenile, we held that this

was insufficient. P.A., 241 N.C. App. at 65, 772 S.E.2d at 248. Likewise, in In re J.H.,

where there was a report in evidence but the proposed guardians did not testify, we

held that this was insufficient. In re J.H., ___ N.C. App. ___, ___, 780 S.E.2d 228, 240

(2015).

 In the instant case, there are two GAL reports and one DSS report in the

record, and Ms. Parker was present in court and offered testimony. The first GAL

 -5-
 IN RE: N.H.

 Opinion of the Court

report, dated 30 June 2016, notes that Ms. Parker “is employed with the school

district[,]” but makes no other observations about Ms. Parker’s resources. The second

GAL report, dated 1 September 2016, notes that Ms. Parker “is employed as a school

bus driver for the school district,” and that Ms. Parker “is a single mom with no

income when she is not driving a school bus during the summer[,]” but otherwise

makes no other observations about Ms. Parker’s resources. The DSS report, also

dated 1 September 2016, notes that respondent has given Ms. Parker a total of $30

when Ms. Parker experienced “significant financial difficulties[,]” that DSS has

provided Ms. Parker with “gift cards of $30 per month to assist with purchasing food

and gas[,]” and that Ms. Parker “has experienced financial difficulties in this

process[,]” but makes no specific findings as to Ms. Parker’s resources aside from

these.

 At trial, Ms. Parker was questioned about her resources. Although she was

not specifically questioned about her salary or benefits, her examination was still

thorough:

 Q. Okay. And so you’re willing to be legally responsible
 for meeting all [Nancy]’s needs until she’s 18 years old, is
 that correct?

 A. Yes.

 Q. And you understand that that means you would [be]
 responsible for meeting her medical needs, her dental
 needs, her psychological needs, her educational needs, and
 any other needs until she’s 18, correct?

 -6-
 IN RE: N.H.

 Opinion of the Court

A. Yes.

Q. And you’re comfortable with that?

A. Yes.

...

Q. Do you work outside the home?

A. Yes.

Q. Where do you work?

A. Buncombe County Schools Transportation.

Q. Okay. And do you have any other source of income?

A. No.

Q. After you are paid every month, do you have
sufficient money to cover all of your household bills?

A. Yes.

Q. And after you pay all of your bills, do you have
money left over to cover groceries and any other needs?

A. It depends on what bills, but yes, we make it.

Q. Have you ever been a position where you didn’t have
enough money to pay all the bills related to housing, food,
medical, transportation?

A. Over this past summer, yes, because I wasn’t able to
be employed with the intense home therapy and stuff, but
I did manage to save up money and it go[t] me through
almost all of the summer. So---

 -7-
 IN RE: N.H.

 Opinion of the Court

Q. Why weren't you able to be employed over the
summer?

A. Due to the nonapproved child care for [Nancy], I
didn’t have no one to leave her with.

Q. Okay. So you were unable to be employed this
summer because you were caring for [Nancy]?

A. Yes. And then whenever she started intense home
therapy, it’s a requirement three to five days a week
[inaudible]. I have to be involved in that.

Q. Okay. And you mentioned you were able to save up
money to get you through the summer?

A. Yes.

Q. Okay. And if the Court were to award guardianship
to you, what would be your plan for next summer?

A. Save up.

Q. Okay. So now that you -- this summer you would be
aware that you would not be able to be employed and you
can save up throughout the year to cover your expenses
during the summer?

A. Yes.

Q. Do you feel---

A. It was -- it was more difficult because I had
transitioned -- I worked at a gas station and transitioned
into the Buncombe County Transportation in, I think,
March -- at the end of March, and then I got [Nancy] and
kind of put it on halt.

Q. Okay.

 -8-
 IN RE: N.H.

 Opinion of the Court

 A. My plan was to have a summer job, so---

 Q. Okay. Do you anticipate that you will have sufficient
 financial income to cover all of your expenses even during
 the summertime when you’re not employed?

 A. Yes.

 Q. Okay. If you were to find that -- say, for example, you
 ran out of money and needed financial assistance, do you
 have family that you could go to ask for help?

 A. Yes.

 Q. Okay. And would you be willing to do that if you had
 to?

 A. Yes.

 Q. And would you also know to reach out to the
 Department or other community resources to seek help if
 you needed to?

 A. Yes.

Certainly, the statements in the GAL and DSS reports, as well as Ms. Parker’s own

testimony that she had financial difficulties over the summer, would constitute

evidence that Ms. Parker lacked the resources to care for Nancy. However, our role

on appeal is not to weigh and compare the evidence; our standard of review merely

asks if there was competent evidence, even hearsay evidence, at trial to support the

trial court’s findings.

 We hold that this matter is distinguishable from In re P.A., in which the only

evidence was an unsworn statement by the guardian that the guardian had the

 -9-
 IN RE: N.H.

 Opinion of the Court

ability to support the juvenile, and from In re J.H., in which the proposed guardians

did not testify. In this case, there is sworn testimony by Ms. Parker regarding her

ability to provide appropriate care for Nancy.

 While Ms. Parker’s testimony appears to be the only evidence in the record to

support her having adequate resources to provide appropriate care for Nancy, it is

nonetheless evidence in the record. No challenge was raised at trial with respect to

this evidence, nor did any party attempt to contradict or impeach Ms. Parker’s

testimony. In fact, in respondent’s attorney’s closing arguments, counsel did not

advocate against Ms. Parker being awarded guardianship, but rather in favor of

reunification with respondent. We hold that, although Ms. Parker’s testimony was

lacking in specificity, her sworn statement that she was willing to care for Nancy and

possessed the financial resources to do so constituted competent evidence, which in

turn supported the trial court’s finding that she “has adequate resources to care

appropriately for the minor child[.]”

 AFFIRMED.

 Judge DILLON concurs in a separate opinion.

 Judge DAVIS dissents in a separate opinion.

 - 10 -
In re N.H. – No. COA17-171

 DAVIS, J., dissenting.

 Because I believe the majority’s opinion is inconsistent with both the statutory

provision at issue and the relevant prior opinions of this Court, I respectfully dissent.

The only issue in this appeal is whether the trial court erred in failing to properly

verify that Ms. Parker possessed the financial resources necessary to adequately care

for Nancy. Subsection (j) of N.C. Gen. Stat. § 7B-906.1 states that

 [i]f the court determines that the juvenile shall be placed
 in the custody of an individual other than a parent or
 appoints an individual guardian of the person pursuant to
 G.S. 7B-600, the court shall verify that the person receiving
 custody or being appointed as guardian of the juvenile
 understands the legal significance of the placement or
 appointment and will have adequate resources to care
 appropriately for the juvenile.

N.C. Gen. Stat. § 7B-906.1(j) (2015) (emphasis added).

 This Court has held that in order to meet this verification requirement, “the

record must contain competent evidence of the guardians’ financial resources and

their awareness of their legal obligations.” In re J.H., __ N.C. App. __, __, 780 S.E.2d

228, 240 (2015) (citation omitted). “The court may consider any evidence, including

hearsay evidence . . . that the court finds to be relevant, reliable, and necessary to

determine the needs of the juvenile and the most appropriate disposition.” N.C. Gen.

Stat. § 7B-906.1(c) (2015). Such evidence may include reports and home studies

conducted by the guardian ad litem (“GAL”) or department of social services (“DSS”).
 IN RE: N.H.

 Davis, J., dissenting

In re J.E., B.E., 182 N.C. App. 612, 617, 643 S.E.2d 70, 73, disc. review denied, 361

N.C. 427, 648 S.E.2d 504 (2007).

 It is instructive to examine prior decisions in which this Court has concluded

that the verification requirement contained in N.C. Gen. Stat. § 7B-906.1(j) was not

satisfied. In re P.A., 241 N.C. App. 53, 772 S.E.2d 240 (2015) involved a trial court’s

award of guardianship of the minor child to his father’s girlfriend, “Ms. Smith.” At

the permanency planning hearing, Ms. Smith was asked if she had (1) “the financial

and emotional ability to support this child and provide for its needs”; (2) “the

willingness to reach out when your resources are running out”; and (3) the

“prepared[ness] to support this minor child . . . .” Id. at 59-60, 772 S.E.2d at 245. She

answered “yes” in response to each of these questions. Id.

 On appeal, the respondent-mother argued that “the trial court [had] failed to

verify that Ms. Smith had adequate resources to care appropriately for [the minor

child] . . . .” Id. at 58, 772 S.E.2d at 245. We agreed, holding that Ms. Smith’s

conclusory answers alone were “insufficient to support the trial court’s finding . . . .”

Id. at 60, 772 S.E.2d at 245. We observed that the record did not present actual

evidence of Ms. Smith’s financial resources, but instead presented “Ms. Smith’s own

opinion of her abilities.” Id. at 65, 772 S.E.2d at 248. Because her opinion as to her

ability to care for the child was not sufficient to show that she actually had adequate

resources to care for him, we ruled that “[t]he trial court ha[d] the responsibility to

 2
 IN RE: N.H.

 Davis, J., dissenting

make an independent determination, based upon facts in the particular case, that the

resources available to the potential guardian are in fact ‘adequate.’” Id. (citation,

quotation marks, and brackets omitted). We further stated that although the

verification requirement under N.C. Gen. Stat. § 7B-906.1(j) does not mandate

“detailed findings of evidentiary facts or extensive findings regarding the guardian’s

situation and resources[,]” this statute does require “some evidence of the guardian’s

‘resources’ . . . as a practical matter, since the trial court cannot make any

determination of adequacy without evidence.” Id. at 61-62, 772 S.E.2d at 246.

 On several other occasions, we have likewise rejected a trial court’s

determination that a prospective guardian possessed adequate resources for purposes

of N.C. Gen. Stat. § 7B-906.1(j). In J.H., the juvenile had been previously placed with

his maternal grandparents at the time the trial court entered a permanency planning

order awarding guardianship to the grandparents. At the hearing, the court was

presented with reports from both the DSS and the GAL. J.H., __ N.C. App. at __, 780

S.E.2d at 240 (2015). The DSS report stated that the grandparents had met all of the

child’s “well-being needs” and “medical needs[,]” including “making sure that he has

his yearly well-checkups.” Id. at __, 780 S.E.2d at 240 (quotation marks omitted).

The GAL report stated that the child “had no current financial or material needs.”

Id. at __, 780 S.E.2d at 240 (quotation marks omitted). The reports also showed that

the grandparents had custody of the minor child’s sister. Based on these reports

 3
 IN RE: N.H.

 Davis, J., dissenting

alone, the trial court found that the grandparents had adequate resources to care for

the child. Id. at __, 780 S.E.2d at 240.

 On appeal, this Court vacated the trial court’s order and remanded on the

ground that the evidence contained in these reports was “insufficient to support a

finding that [the minor child’s] grandparents have adequate resources to care for

[him].” Id. at __, 780 S.E.2d at 240 (citation and quotation marks omitted). In so

holding, we stated that “[t]he trial court . . . failed to make an independent

determination, based upon facts in the particular case, that the resources available

to the potential guardian are in fact adequate.” Id. at __, 780 S.E.2d at 240 (citation

and quotation marks omitted).

 Similarly, in In re T.W., __ N.C. App. __, 796 S.E.2d 792 (2016), we held that

the trial court erred in awarding legal custody to the minor child’s aunt because it

had not verified that she would have adequate resources to care for the child. At the

permanency planning hearing, the aunt testified that “she had yet to find

employment and was just continuously looking for jobs” and had received “additional

support and assistance” from her mother and grandmother so as to enable her to

provide care for the juvenile. Id. at __, 796 S.E.2d at 798. The trial court received a

GAL report that described the aunt’s home as “very clean” and stated that the child

would have “his own room.” Id. at __, 796 S.E.2d at 798. However, we determined

that this evidence did not support the trial court’s finding that the aunt had adequate

 4
 IN RE: N.H.

 Davis, J., dissenting

resources to care for the child. We stated that “vague assurances do not suffice to

allow an independent determination by the court, based upon the facts in the

particular case, that the resources available to the potential custodian are in fact

‘adequate’ for purposes of N.C. Gen. Stat. § 7B-906.1(j).” Id. (citation and quotation

marks omitted).

 In the present case, the only witness who testified at the 6 September 2016

permanency planning hearing on this issue was Ms. Parker herself. She testified

that she had previously been employed as a bus driver during the prior school year.

She stated, however, that she had been unable to obtain employment during the

summer of 2016 because she had to participate in Nancy’s intensive home therapy

and other needs. She further conceded that her lack of employment during the

summer months had resulted in her not having enough funds to pay all of her bills.

She stated that she had been able to save up some money, which got her “through

almost all of the summer.”

 Nevertheless, she answered in the affirmative when asked (1) whether she

would have “sufficient financial income to cover all of [her future] expenses”; (2)

whether she “ha[d] family that [she] could go to ask for help”; and (3) whether she

would “know to reach out to [DSS] or other community resources to seek help if [she]

needed to.” In addition, she stated that her future plan for the following summer

 5
 IN RE: N.H.

 Davis, J., dissenting

would be to “[s]ave up” and that she anticipated she would have sufficient income to

cover her expenses next summer.

 Rather than demonstrating that N.C. Gen. Stat. § 7B-906.1(j) had been

satisfied, both Ms. Parker’s testimony and the reports prepared by DSS and the GAL

supported the opposite conclusion — that she lacked the financial resources to care

for Nancy. Ms. Parker did not testify as to her actual income, her job benefits, or any

other specific information regarding her finances. Moreover, she did not specify the

amount of money she was lacking to pay her bills during her financial shortfall during

the summer of 2016.

 The DSS and GAL reports unambiguously showed that Ms. Parker has

struggled financially while caring for Nancy. The GAL’s report stated that Ms.

Parker had a problem with transporting Nancy to visits, because she “is a single mom

with no income when she is not driving a school bus during the summer.” The report

prepared by DSS further stated, in pertinent part, as follows:

 [Ms. Parker] had to cancel a recent orthopedic appt. due to
 transportation difficulties . . . .

 ....

 [Ms. Parker] has experienced financial difficulties in this
 process as she has provided transportation for the child for
 visitations, mental health appointments, physician
 appointments, school registration, etc. as well as providing
 for the minor child’s basic needs.

 ....

 6
 IN RE: N.H.

 Davis, J., dissenting

 Respondent mother has given the caregiver, [Ms. Parker],
 a one[-]time amount of $20 followed recently by a $10
 support during times when [Ms. Parker] has experienced
 significant financial difficulties. . . .

 ....

 . . . The agency has provided the caregiver, [Ms. Parker],
 with gift cards of $30 per month to assist with purchasing
 food and gas. . . . [Social Worker] Banks made [a] referral
 to the Bair Foundation which has offered [Ms. Parker]
 some assistance with school supplies.

 This evidence — in addition to Ms. Parker’s own testimony about her lack of

funds — demonstrated that Ms. Parker lacked the resources necessary to act as

Nancy’s guardian. As stated above, her own opinion of her future ability to financially

care for Nancy, without more, was insufficient to support the court’s finding that she

possessed adequate resources as required under N.C. Gen. Stat. § 7B-906.1(j). See In

re P.A., 241 N.C. App. at 65, 772 S.E.2d at 248.

 It is important to note that this is not a case in which there was conflicting

evidence on this issue as to which it was the trial court’s duty to weigh. To the

contrary, the only evidence other than Ms. Parker’s vague assurances showed that

she has struggled to make ends meet. N.C. Gen. Stat. § 7B-906.1(j) clearly requires

that before a person is appointed as guardian for a juvenile competent evidence must

be presented that the prospective guardian will actually have adequate resources to

 7
 IN RE: N.H.

 Davis, J., dissenting

take care of the child’s needs. Here, such evidence simply was not presented to the

trial court.

 For these reasons, I would hold that the trial court’s finding that Ms. Parker

“has adequate resources to care appropriately for the minor child” is unsupported by

the competent evidence presented at the permanency planning and review hearing

and that the trial court’s order must be vacated. Accordingly, I dissent.

 8
 No. COA17-171 – In re: N.H.

 DILLON, Judge, concurring.

 In this matter, the trial court entered an order granting Ms. Parker

guardianship over N.H. Our General Assembly requires that a trial court considering

the appointment of a guardian must first verify that the potential guardian “will have

adequate resources to care appropriately for the juvenile.” N.C. Gen. Stat. § 7B-

906.1(j) (emphasis added). The sole issue here is whether there was sufficient

evidence before the trial court for it to determine that Ms. Parker had adequate

resources to care for N.H. in the future. Whether the evidence was sufficient in this

case is a close question. But based on our binding jurisprudence on the issue, we

must conclude that the evidence presented at the hearing was sufficient.

 I believe that this case is more similar to In re J.E., 182 N.C. App. 612, 643

S.E.2d 70 (2007) (holding that the trial court’s consideration of a home study was

“adequate compliance” with the relevant statutes), than the three cases relied on in

the dissenting opinion – In re P.A., 241 N.C. App. 53, 772 S.E.2d 240 (2015), In re

J.H., ___ N.C. App. ___, 780 S.E.2d ___ (2015), and In re T.W., ___ N.C. App. ___, 796

S.E.2d 792 (2016) – in which we held the evidence to be insufficient to justify the trial

court’s course of action. Specifically, like in In re J.E., and unlike the three cases

relied on in the dissent, there was evidence at the hearing in this matter that the

current income of the prospective guardian, Ms. Parker, was adequate to care for the

juvenile going forward. Specifically, Ms. Parker testified that she was employed as a
 In re: N.H.

 DILLON, J., concurring

bus driver and that her income was sufficient to cover her expenses in caring for N.H.

with some left over for savings.2 Accordingly, I concur with the majority. I write

separately to highlight the distinction between In re J.E. and the three cases relied

upon in the dissent.

 The key distinction between In re J.E. and the three cases relied upon in the

dissenting opinion is that in In re J.E. there was at least some evidence regarding the

prospective guardian’s resources to care for the minor in the future. In the three cases

relied upon in the dissent, the evidence we found insufficient consisted of nothing

more than evidence that (1) the prospective guardian had adequately cared for the

juvenile in the recent past, and (2) a conclusory statement that the prospective

guardian would be able to care for the juvenile in the future, without any reference

to the evidence forming the basis of the opinion.3

 2 Ms. Parker essentially testified that she worked as a school bus driver, that she had cared
for N.H. during the prior school year and was able to save money during the year, that she was out of
work during the summer where she spent her savings and ran out of money, but that at the time of
the hearing she was again employed as a bus driver and the income was sufficient to cover her needs
and the needs of N.H.
 3 In re P.A., 241 N.C. App. at 58, 772 S.E.2d at 245 (prospective guardian’s opinion that she

could and would care for the juvenile was insufficient to allow the trial court to make an independent
determination regarding the guardian’s resources going forward); In re J.H., ___ N.C. App. at ___, 780
S.E.2d at 240 (trial court failed to consider any evidence regarding the potential guardians’ current
resources when it considered that the guardians had a history of caring for the juvenile in the past);
In re T.W., ___ N.C. App. at ___, 796 S.E.2d at 797 (evidence that the home of the potential guardian
was suitable in size and condition to care for the juvenile and a vague assurance that the guardian
was looking for work to provide for the juvenile in the future was insufficient).

 2
 In re: N.H.

 DILLON, J., concurring

 In In re J.E. our Court held that evidence which consisted of a conclusion by

DSS4 that the prospective guardians “have adequate income and are financially

capable of providing for the needs of [the juvenile]” was sufficient. In re J.E., 182

N.C. App. at 617, 643 S.E.2d at 73 (emphasis added). In other words, the

distinguishing factor was that the trial court had some evidence regarding the

current income of the prospective guardians, which our Court held was sufficient even

though there was nothing in our opinion to suggest that the trial court itself delved

into the math in its investigation of the guardians’ resources. Our Court in In re P.A.

(one of the three opinions relied upon in the dissent) held that the conclusion by DSS

in In re J.E. distinguished In re J.E. from In re P.A., where there was no evidence

regarding the prospective guardian’s current resources to care for the juvenile going

forward:

 In re J.E. is easily distinguishable from this case based
 upon the extensive evidence regarding the guardians
 presented in that case, which included the two home study
 reports.

 It is correct that the trial court need not make detailed
 findings of evidentiary facts or extensive findings
 regarding the guardian’s situation and resources, nor does
 the law require any specific form of investigation [by the
 trial court] of the potential guardian. But the statute does
 require the trial court to make a determination that the
 guardian has “adequate resources” and some evidence of
 the guardian’s “resources” is necessary as a practical
 matter[.]

 4 “DSS” refers to the two departments of social services which had been involved in the matter.

 3
 In re: N.H.

 DILLON, J., concurring

In re P.A., 241 N.C. App. at 61-62, 772 S.E.2d at 246 (citations omitted) (emphasis

added).

 Like in In re J.E. the evidence in the present case consisted of more than just

a conclusory opinion by Ms. Parker that she could care for N.H. The evidence also

consisted of her testimony about her job and the income from her job. This testimony

appears almost identical to the conclusion by DSS in In re J.E. It may be argued that

such testimony from the guardian herself is not as credible as similar testimony from

DSS, but this issue goes to the weight of the evidence, not its sufficiency. Accordingly,

based on our holding in In re J.E., I fully concur in the majority opinion holding that

the trial court had sufficient evidence to make a determination regarding the

adequacy of Ms. Parker’s resources to care for N.H.

 4