IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1027

Filed: 20 October 2020

Onslow County, No. 18-JA-183/184

IN THE MATTERS OF: N.K. AND D.K.

Appeal by respondent-mother and respondent-father from order entered 12 August 2019 by Judge Sarah C. Seaton in District Court, Onslow County. Heard in the Court of Appeals 25 August 2020.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Jackson W. Moore, Jr., for guardian ad litem.*
>
> *Patrick S. Lineberry, for respondent-mother.*
>
> *Steven S. Nelson, for respondent-father.*

STROUD, Judge.

Respondent-parents appeal a juvenile adjudication and disposition order for their two children. We affirm the adjudication order and vacate in part the disposition and remand only the provisions regarding visitation. As to respondent-mother, the district court may not leave visitation in the discretion of third parties; as to respondent-father, the court must clarify his right to file a motion to review.

I.     Background

On 7 November 2018, the Onslow County Department of Social Services ("DSS") filed a juvenile petition alleging Norm[1] was an abused and neglected juvenile and Doug was a neglected juvenile. The petition alleged respondent-mother burned down the family home and took and distributed pornographic photos of Norm; as to respondent-father, the petition alleged he had full knowledge of respondent-mother's criminal behavior but had been unwilling to protect the children. After hearings on 13 and 17 May 2019, on 12 August 2019, the district court entered an order with extensive findings of fact and ultimately adjudicated Norm as abused and both children as neglected. The court ordered that respondent-mother was not allowed to have any contact with the children until agreed upon by her and the children's therapists; respondent-father's visitation was supervised. Both respondent-mother and respondent-father appeal.

## II.     Respondent-Mother

Respondent-mother makes three arguments on appeal.

A.     Sufficiency of Evidence to Support Findings

Respondent-mother first contends "the trial court's order relies on a vacuum of evidence for adjudicating . . . [the children] as neglected and [Norm] as abused[.]" (Original in all caps.)

> We review an adjudication under N.C. Gen. Stat. §
> 7B-807 to determine whether the trial court's findings of

---

[1] Pseudonyms are used throughout the opinion.

fact are supported by clear and convincing competent evidence and whether the court's findings support its conclusions of law. The clear and convincing standard is greater than the preponderance of the evidence standard required in most civil cases. Clear and convincing evidence is evidence which should fully convince. Whether a child is dependent is a conclusion of law, and we review a trial court's conclusions of law de novo.

*In re M.H.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (July 7, 2020) (No. COA19-1132) (citations and quotation marks omitted).

Mother argues most of the substantive findings of fact regarding her abuse of Norm are not supported by the evidence. But respondent-mother does not challenge finding of fact 2(j) determining that

> [o]n or about August 31, 2018, the respondent mother was arrested for several charges relating to her taking pornographic pictures of the juvenile . . . [Norm] and distributing them, under the guise of their production and distribution by her brother, who resides in Alamance County. The respondent mother took the photographs to the Jacksonville Police Department, alleging that they were taken by her brother, and the law enforcement investigation revealed that they had in fact been taken and distributed by her.

Evidence of the creation, dissemination, or maintenance of pornographic photos of a child is evidence of abuse. *See* N.C. Gen. Stat. § 7B-101(1)(d) (2017) (defining an "[a]bused juvenile[]" in part as "preparation of obscene photographs, slides, or motion pictures of the juvenile, as provided in G.S. 14-190.5; employing or permitting the juvenile to assist in a violation of the obscenity laws as provided in

G.S. 14-190.6; dissemination of obscene material to the juvenile as provided in G.S. 14-190.7 and G.S. 14-190.8; displaying or disseminating material harmful to the juvenile as provided in G.S. 14-190.14 and G.S. 14-190.15; first and second degree sexual exploitation of the juvenile as provided in G.S. 14-190.16 and G.S. 14-190.17[.]").[2]

Respondent-mother's argument that there was no substantive evidence to support the findings of her abuse of Norm is not supported by the record. Detective Daniel Karratti of the Jacksonville Police Department extensively testified regarding the investigation which led to respondent-mother's criminal charges that form the basis for the adjudication of Norm as an abused child. We will not discuss Detective Karratti's testimony in detail here or the crimes and related file numbers under which respondent-mother was criminally charged. The question in this case is not whether respondent-mother is guilty of the alleged crimes; we are only considering whether the district court findings are supported by clear and convincing evidence. *See M.H.*, ___ N.C. App. at ___, ___ S.E.2d at ___.

---

[2] There have been several versions of North Carolina General Statute § 7B-101 between 2017-2019 but all have classified creating, disseminating, or otherwise maintaining pornographic photos of a child as abuse of that child. *See generally* N.C. Gen. Stat. § 7B-101(1)(3) (2017-2019).

The evidence shows respondent-mother admitted to the detective that she had sent a pornographic photo of Norm to her aunt.[3]  Respondent-mother claimed her brother had taken the photographs, although Detective Karratti determined respondent-mother had taken them.  In any event, even if respondent-mother's brother took the photographs, respondent-mother admitted she disseminated them, regardless of her purpose for the distribution.

The evidence thus supported the district court's finding of fact

> that the respondent mother's cell phone had a number of pictures of the juvenile . . . [Norm] unclothed and in seductive poses, which the respondent mother disseminated to a number of people as an elaborate hoax to indicate that her brother had taken and sent the pictures, when in fact the pictures were taken and sent by her.  The respondent father should have been aware that the respondent mother put their child in substantial harm by taking and disseminating these pictures. The Court further finds that these pictures are now released into an electronic space where they may be disseminated again, causing significant harm to the juvenile [Norm] now, and in the future.

Detective Karratti's testimony was "clear, and convincing competent evidence[,]" *see In re M.H.*, ___ N.C. App. at ___, ___ S.E.2d at ___, supporting the

---

[3] Upon further questioning respondent-mother recanted her statement but her admission coupled with the photos on her phone are evidence that Norm was an abused juvenile. *See generally* N.C. Gen. Stat. § 7B-101(1)(d).  The trial court determines the credibility and weight of that evidence. *See generally Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) ("We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial.").

district court's findings. The evidence supports the district court's findings that respondent-mother had knowingly distributed a pornographic photo of Norm, and this finding is sufficient to support the district court's adjudication of abuse. *See generally* N.C. Gen. Stat. § 7B-101(d)(1).

A neglected juvenile is defined in part as a child who lives in an environment injurious to his welfare. *See* N.C. Gen. Stat. § 7B-101(15) (2017). The proper adjudication of the recent and disturbing abuse of Norm while Doug was in the same environment is clear and convincing competent evidence of the neglect of Doug. *See In re C.M.*, 198 N.C. App. 53, 65–66, 678 S.E.2d 794, 801 (2009) ("Since the statutory definition of a neglected child includes living with a person who has abused or neglected other children, and since this Court has held that the weight to be given that factor is a question for the trial court, the trial court, in this case, was permitted, although not required, to conclude that Tess was neglected based on evidence that respondent-father had abused Alexander. *See, e.g., In re A.S.*, 190 N.C. App. 679, 691, 661 S.E.2d 313, 321 (2008) (affirming the trial court's adjudication of neglect of one child based on evidence that respondent had abused another child by intentionally burning her), *affirmed per curiam*, 363 N.C. 254, 675 S.E.2d 361 (2009); *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) (affirming adjudication of neglect of one child based on prior adjudication of neglect with respect to other children and lack of accepting responsibility). *With this Court's determination supra that*

*Alexander was properly adjudicated abused, any weight given by the trial court to the abuse adjudication in determining Tess's neglect was proper*." (emphasis added)). Further, the evidence establishing Norm's abuse is enough to substantiate that he lived in an environment injurious to his welfare, *see* N.C. Gen. Stat. § 7B-101(15) (2017), and thus was also a neglected juvenile. The district court properly adjudicated Norm as abused and both children as neglected. This argument is overruled.

B.    Visitation

The district court's order does not allow respondent-mother to have any contact with the children "until agreed upon and recommended by both the children's therapists and therapist of [respondent-mother] only after court recommendations for her bond conditions or probation terms change." Respondent-mother next contends "the trial court erred in denying [respondent-mother] visitation with . . . [the children] and otherwise leaving visitation in the discretion of the therapists." (Original in all caps.) The *guardian ad litem* has requested we vacate and remand the order as to respondent-mother's visitation for "greater clarity" as one potential reading of the order "would be to delegate the visitation authority to certain therapists without court intervention."

"We review a dispositional order only for abuse of discretion. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have

been the result of a reasoned decision." *Matter of S.G.*, ___ N.C. App. ___, ___, 835

S.E.2d 479, 486 (2019) (citation, quotation marks, and brackets omitted).

North Carolina General Statute §7B-905.1(a) addresses the requirements for

court orders regarding visitation with a child who has been removed from the home:

> An order that removes custody of a juvenile from a parent,
> guardian, or custodian or that continues the juvenile's
> placement outside the home shall provide for appropriate
> visitation as may be in the best interests of the juvenile
> consistent with the juvenile's health and safety. The court
> may specify in the order conditions under which visitation
> may be suspended.

N.C. Gen. Stat. §7B-905.1 (2017).[4]

Although the district court may deny a parent visitation with a child if it

determines visitation is not in the child's best interest, *see id.*, the court must make

appropriate findings to support an order denying visitation. *See generally Matter of

T.W.*, 250 N.C. App. 68, 77, 796 S.E.2d 792, 798 (2016) ("The order must establish an

adequate visitation plan for the parent in the absence of findings that the parent has

forfeited their right to visitation or that it is in the child's best interest to deny

visitation." (citation, quotation marks, and brackets omitted)). If the district court

orders visitation, the court "shall specify the minimum frequency and length of the

visits and whether the visits shall be supervised." N.C. Gen. Stat. §7B-905.1(d).

---

[4] North Carolina General Statute § 7B-905.1 was amended effective 1 October 2019 and will guide the district court upon remand. *See* N.C. Gen. Stat. §7B-905.1 (2019).

This Court has previously determined that a lower court may not delegate its authority to set visitation to the custodian of the child: "[W]hen visitation rights are awarded, it is the exercise of a judicial function." *See generally In re Custody of Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971) ("We do not think that the exercise of this judicial function may be properly delegated by the court to the custodian of the child. Usually those who are involved in a controversy over the custody of a child have been unable to come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian."). Here, the district court neither completely denied visitation nor set out terms for visitation but instead delegated both the authority to allow visitation and the terms of that visitation to three therapists who worked with respondent-mother and each child.

While there is more than one way to interpret the court's order regarding respondent-mother's visitation, we agree the order seems to delegate the decision to allow visitation, as well as the conditions and schedule of visitation, to three therapists, as it was to be "agreed upon" by the children's therapists and respondent-mother's therapist. Under the terms of the order, if one of the three therapists fails to agree, no visitation would occur. We vacate and remand the visitation portion of

the order as it applies to respondent-mother for the district court to exercise its own discretion regarding visitation and to enter an order with provisions as required by North Carolina General Statute § 7B-905.1.

C.      Relative Placement

Lastly, respondent-mother incorporates respondent-father's first argument on appeal regarding relative placement. As the substance of the argument is in respondent-father's brief, we will address it in the portion of the opinion regarding his appeal.

D.      Summary

In summary, the district court properly adjudicated Norm as abused and the children as neglected, but we vacate the portion of the order regarding respondent-mother's visitation and remand entry of an order addressing visitation in accord with North Carolina General Statute §7B-905.1.

### III.      Respondent-Father

Respondent-father makes five arguments on appeal. We will address respondent-father's arguments regarding the adjudication first.

A.      Sufficiency of Evidence to Support Findings for Adjudication

Like respondent-mother, respondent-father also contends "the trial court[']s order relies on a vacuum of evidence for adjudicating [Doug] and [Norm] as neglected and [Norm] as abused[,]" (original in all caps), and the entirety of this portion of his

argument is the incorporation of respondent-mother's argument. We have already addressed this argument and overrule it.

Respondent-father raises an additional argument regarding the sufficiency of the evidence to support the trial court's findings regarding his knowledge of Respondent-mother's actions. Respondent-father contends "the trial court erred when it found during the children's adjudication, that [respondent-father] had prior knowledge of [respondent-mother's] prior criminal behavior and knowledge of her current criminal behavior and that he failed to protect his children from their abuse and neglect. Respondent-father testified about respondent-mother's criminal behavior. In his brief, he contends that he "knew" what respondent-mother was *accused* of but he did not "know" she actually did these things. We need not list the findings of fact regarding respondent-father's knowledge, as he does not challenge the findings as unsupported by the evidence. Regardless of respondent-father's beliefs about respondent-mother's actions, the record supports the district court's determination that respondent-father was aware of respondent-mother's criminal charges *and* the actions which led to the charges, and we read the findings of fact as addressing his awareness of respondent-mother's actions and not whether he knew or believed she was guilty of a particular crime. This argument is without merit.

B.     Relative Placement

Respondent-father first contends "the trial court erred and abused its discretion when it failed to place the children with family members and failed to comply with the statutory mandates contained in N.C. Gen. Stat. §§ 7B-903(a1) (2015) and 7B-506(h)(2) (2017)." (Original in all caps.) We first note that North Carolina General Statute § 7B-506 (2017) is entitled "Hearing to determine need for continued nonsecure custody[.]" None of the orders for continued nonsecure custody are at issue on appeal, and therefore we address only respondent-father's argument as to relative placement under North Carolina General Statute § 7B-903. We review statutory compliance *de novo*. *See generally In re M.S.*, 247 N.C. App. 89, 91, 785 S.E.2d 590, 592 (2016) ("We consider matters of statutory interpretation *de novo*." (citation omitted)).

As to North Carolina General Statute § 7B-903(a1), respondent-father argues that the court did not make findings of fact regarding why the best interests of the children would not be served by placing them with relatives, as he contends is required by the statute. North Carolina General Statute § 7B-903(a1) provides,

> In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile. In placing a juvenile in out-of-home care under this section, the court shall also consider whether it

is in the juvenile's best interest to remain in the juvenile's community of residence. Placement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children.

N.C. Gen. Stat. § 7B-903 (2019). Thus, the district court must first consider whether a "relative is willing and able to provide proper care and supervision in a safe home[.]" *Id.* If so, "*then* the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile." *Id.*

Respondent-father argues placement with a relative would be in the best interest of the children, but he ignores the first portion of the statute. The district court must first determine there is a relative who is willing to care for the children and "able to provide proper care and supervision in a safe home[.]" *Id.* Here, the court found there was no relative available who met these statutory requirements, so there was no need to consider whether placement with a relative would be in the children's best interests.

Father contends there were two relatives available to care for the children: a maternal great aunt, Ms. Smith, and the children's paternal half-sister, Ms. Adams.[5] As to Ms. Smith, DSS had reported that her placement was not suitable: "Home Study for . . . [the Smiths] w[as] denied." The DSS report was admitted as evidence

---

[5] We have used pseudonyms for these relatives to protect the identity of the juveniles.

at the disposition hearing. Further, a prior continuation of nonsecure custody order from March of 2019 had found "the [Smiths] had their home assessment denied by Alamance County." Neither respondent challenged the DSS report, the nonsecure custody order finding, or presented any evidence indicating Ms. Smith was available and able to care for the children.

As to Ms. Adams, the district court found that

> [t]he juveniles were removed from the home of their paternal sister . . . [Ms. Adams] after a hearing on March 25, 2019 when the Court found that [Ms. Adams] was allowing the juveniles to sleep overnight at the home of their paternal grandmother, who has prior child protective services history and is not an appropriate caregiver to these juveniles[;]

Respondent-father does not challenge this finding of fact but contends it is not sufficient to establish that Ms. Adams was not "willing and able to provide proper care and supervision of the juvenile in a safe home." Yet all of the evidence before the court showed that neither Ms. Smith nor Ms. Adams were able to provide "proper care and supervision" or a "safe home." *Id.* Respondent-father presented no evidence to counter DSS's evidence or the home studies of the relatives. There was no need for the district court to make findings of fact as to why it was not in the children's best interests to be placed with Ms. Smith and Ms. Adams since neither was able to provide a safe and appropriate home.

Based upon the evidence and binding finding of fact, *see In re C.B.*, 245 N.C. App. 197, 199, 783 S.E.2d 206, 208 (2016) ("Unchallenged findings are binding on appeal."), there was not an appropriate relative placement available for the children. The court *only* engages in a best interests analysis as to relative placement, after "*first* consider[ing] whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home" and upon determining "the relative *is* willing and able to provide proper care and supervision in a safe home[.]" *Id.* (emphasis added). Here, the uncontroverted evidence and findings in this and a prior order establish Ms. Smith and Ms. Adams were not "able to provide proper care and supervision of the juvenile in a safe home[,]" and thus the court did not need to take the next step of considering the children's best interests. *Id.* The district court complied with North Carolina General Statute § 7B-903(a1).[6] Further, the court did not abuse its discretion regarding its disposition of non-relative placement. *See S.G.*, ___ N.C. App. at ___, 835 S.E.2d at 486. This argument is overruled.

C.      Motion for Review

---

[6] Respondent-father also contends it is in the best interests of the children to be in placement together, and this would be accomplished by the children staying with relatives, but again, such an analysis specifically under North Carolina General Statute § 7B-903(a1) as is at issue on appeal, is only required *after* a determination that relative placement is possible and appropriate. *See generally* N.C. Gen. Stat. § 7B-903(a1).

Respondent next contends "the trial court erred when it failed to advise and given notice to [respondent-father] of his right to file a motion for review of the visitation plan." (Original in all caps.) As with the provisions regarding respondent-mother's visitation, the *guardian ad litem* also requests this Court vacate the provisions of the order regarding visitation and remand for explicit compliance with North Carolina General Statute § 7B-905.1(d). As we are already remanding the visitation provision regarding respondent-mother and as the *guardian ad litem* requests the same remedy as respondent-father, we also remand the rest of the visitation provision as all parties have contended the entirety of the visitation determinations made by the court lacked clarity regarding who had discretion over visitation and a right to review. *See, e.g., Matter of J.L.*, ___ N.C. App. ___, ___, 826 S.E.2d 258, 268-69 (2019) (vacating and remanding for compliance with N.C. Gen. Stat. § 7B-905.1(d)).

D.     Best Interests

Respondent-father next contends "the trial court erred when it failed to comply with the statutory mandates required to satisfy the children's best interests in the initial disposition." (Original in all caps.) The only statute cited and quoted by respondent-father is a federal one regarding "reasonable efforts" to place siblings together. For the remainder of the argument, respondent-father essentially reasserts his points regarding relative placement and rather than challenging any findings of

fact contends that the district court was simply wrong about what was in the children's best interests.

Respondent-father contends "[t]he children's best interests require that they be kept together in a home with family and with frequent access to their father." As a general proposition, North Carolina's statutes recognize "family autonomy" as an ideal goal for all families. *See* N.C. Gen. Stat. § 7B-100 (2019).

Some of the purposes of Chapter 7B, subchapter I are

> (3)     To provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence; and
> (4)     To provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents.

*Id.*

Unfortunately, it is not always possible for children to be safe "in a home with family and with frequent access to their father." The district court properly considered the children's interests while evaluating the alternatives that were *actually* available to them. The court made many findings of fact which are not at issue on appeal supporting the court's adjudication and its determination that the children should remain in the custody of DSS. The court did not abuse its discretion

in its extensive dispositional analysis regarding best interests. *See S.G.*, ___ N.C. App. at ___, 835 S.E.2d at 486. This argument is overruled.

E.    Summary

In summary, we vacate and remand only regarding the visitation provisions for respondent-father and remand for the district court to enter a new order addressing visitation, including provisions regarding respondent-father's right to file a motion for review.

IV.    Conclusion

We affirm the order as to adjudication and vacate in part the provisions regarding disposition, specifically as to visitation. On remand, the trial court shall enter a new order addressing respondent-mother's visitation and clarifying respondent-father's right to file a motion to review.

AFFIRMED in part; VACATED and REMANDED in part.

Judges DIETZ and ZACHARY concur.